Prichard Funeral Home, Inc. v. Commissioner.
Prichard Funeral Home, Inc. v. Commissioner
Docket No. 584-64.
United States Tax Court
T.C. Memo 1966-276; 1966 Tax Ct. Memo LEXIS 7; 25 T.C.M. (CCH) 1434; T.C.M. (RIA) 66276; December 28, 1966
Theodore Tenny, 404 Commerce Bldg., Kansas City, Kan., for the petitioner. Hugh C. McMahon, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The respondent has determined a deficiency of $2,529.42 in the petitioner's income tax for its fiscal year ended August 31, 1960. Certain issues have been conceded by the respondent leaving for our consideration the following: I. Whether petitioner was entitled to debit its gross *8 sales for the year in issue by $3,000 on its contention that it had paid off an unrecorded note in the amount of $2,400 and had paid for $600 worth of unrecorded "merchandise." II. Whether $1,232.73 received from prospective customers during the year in issue and deposited by petitioner in an account which it denominated "Future Need Fund" was includable in gross income. III. Whether petitioner's method of handling and reporting gain from a sale of corporate stocks was proper, and IV. Whether payments of $200 each to the wives of petitioner's two principal stockholders were deductible as ordinary and necessary business expenses. General Findings of Fact Some of the facts have been stipulated and are so found. Petitioner, a Missouri corporation, was organized in 1952 and maintains its principal place of business in Excelsior Springs, Missouri. It filed its corporate Federal income tax return for the fiscal year ended August 31, 1960, with the district director of internal revenue at Kansas City, Missouri. The petitioner is and has been engaged in the business of providing funeral services. Together, petitioner's president, Lindell K. Jarman, and vice president, Ralph *9 Van Landingham, owned 96 percent of its capital stock. The remainder of the stock was owned by their wives. During the fiscal year involved herein petitioner kept its books and filed its tax returns by using an accrual method of accounting. Facts and Opinion, Issue I This issue concerns respondent's disallowance of a $3,000 debit to sales income during the petitioner's fiscal year ended August 31, 1960. It is stipulated that the $3,000 debit was not made to correct any erroneous inclusion in sales income for the taxable year involved. Petitioner contends that it made the $3,000 debit in order to correct accounting mistakes of $2,400 and $600 which it had made in its previous fiscal year (thereby overstating its income by $3,000 in such year), but we cannot find from the record herein either that such mistakes were made or that income for the previous year was in fact overstated. Even if we were to assume the facts upon which petitioner's contention is founded it could not change the result, for the proper remedy for overpaid taxes in a previous year is a claim for refund. As we said in , "Petitioner has cited no statutory provision *10 and we know of none permitting a reduction in gross income by the aggregate amount of the improper inclusions in gross income in prior years due to bookkeeping errors in those years." We decide this issue for respondent. Facts and Opinion, Issue II The second issue involves the increase during the year in issue of $1,232.73 in petitioner's savings and loan account which it denominated "Future Need Fund." Petitioner solicited and accepted payments during a customer's lifetime so that at death there would be funds available to provide for funeral services, depositing them regulary in such "Future Need Fund" account. The payments were refundable on demand and in fact some refunds were made. Respondent's determination included the $1,232.73 in petitioner's income. The petitioner argues that it had no claim of right to the customer's money because it was merely acting as a depository, but in support of this position it offers no evidence to show that it was a trustee of, or a conduit for the funds. In fact, the petitioner strongly denies the existence of any contract between itself and the customer. In the absence of any evidence to the contrary we are forced to conclude that *11 the customer's payments are prepaid income for services not yet rendered. [1]
Section 61 [2] defines gross income as "income from whatever source derived." Section 451 requires that "any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer." Recent Supreme Court cases have clearly established that where an accrual basis taxpayer receives money without restriction upon its use and disposition it is subject to taxation in the year received even though it was received before it was earned. ; ; *12 . We therefore uphold the respondent's inclusion of $1,232.73 in gross income for the taxable year in question.
Facts and Opinion, Issue III The third issue concerns the proper treatment to be given the sale of common stock by the petitioner. Prior to June 23, 1960, petitioner owned 12 shares of Raytheon stock having a cost basis of $403.31, on that day it sold these shares for $509.34. Instead of treating this transaction as producing a capital gain, petitioner deducted the cost basis of $403.31 as an ordinary expense, calling it a "loss and drilling expense." Respondent determined that the $403.31 did not constitute a deductible expense and that the difference between the sale price of the stock ($509.34) and its cost basis ($403.31) constitutes a capital gain in the amount of $106.03. Petitioner does not quarrel with the respondent's position, but instead asserts that it took the sale price of the stock into income as a debit to its accounts receivable entitled "due from officers" and deducted its cost as a drilling expense. No evidence in the record *13 supports this contention, consequently respondent's determination is upheld. Facts and Opinion, Issue IV The final issue in this case concerns the proper characterization of funds expended by the petitioner in two $200 checks each dated March 24, 1960, and payable respectively to the wives of the petitioner's two principal stockholders. Each of these checks bore the notation "1959 Christmas," and they were issued to reimburse the wives for moneys which they allegedly had expended in connection with petitioner's business. No evidence was introduced to show the amount or exact nature of the claimed expenditures made by the ladies, therefore it cannot be said that the expenditures were ordinary and necessary business expenses within the meaning of section 162. Mere statements that expenditures of some unspecified amounts were made to join a bowling team and to entertain at luncheons does not satisfy petitioner's burden of proof, therefore the respondent's determination disallowing these claimed deductions is upheld. To reflect the agreement of the parties on other issues, Decision will be entered under Rule 50. Footnotes
1. Nothing in the present case gives us cause to depart from our prior holding in . There, faced with the same issue we held that this same petitioner's receipt of advance payments for funeral services to be rendered in the future constituted income in the year received. The additional evidence adduced in the present case to show that petitioner may be contractually bound to refund moneys, changes nothing. .↩
2. All references are to the Internal Revenue Code of 1954.↩